No. 80-43

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

SYLVIA C. WARDEN,

Defendant and Appellant.

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Edward Dussault, Judge presiding.

Counsel of Record:

For Appellant:

Stephens Law Firm, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana

Submitted on briefs: October 23, 1980

Decided: March 23, 1981

Filed:
MAR 23 1981

*Thomas J. Kearney*

———————————————————— Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal is from an order of the District Court, Thirteenth Judicial District, Yellowstone County, affirming the conviction of defendant Sylvia C. Warden in the Justice Court, Billings Township, of the offense of abuse of a school teacher. For the reasons following, we dismiss the appeal.

On April 12, 1974, a complaint was filed in the Justice Court, Billings Township, Yellowstone County, Montana, alleging that Sylvia C. Warden had on March 29, 1974, purposely or knowingly insulted a school teacher, Lynette Little, on school grounds in that county by calling the teacher an abusive and vulgar name, "a son of a b--", in violation of then section 75-6110, R.C.M. 1947, now section 20-4-303, MCA.

Defendant was found guilty upon trial by jury on May 23, 1974. The Justice Court assessed a fine of $50. On May 24, 1974, the defendant filed a written notice of appeal and provided a cash bond in the amount of $50.

The appeal was submitted to the Thirteenth Judicial District Court, Yellowstone County, Montana, upon stipulated facts. From the stipulation, it appears that Sylvia C. Warden was a resident of Yellowstone County, Montana and had a school-aged daughter named Miracle Stapp. At the time of the alleged criminal conduct, the 13-year-old daughter was a student at Lewis and Clark Junior High School in Billings. The alleged violation occurred during the course of an argument between the defendant, as the parent of Miracle Stapp, and her counselor in that school, Lynette Little. There was a confrontation between the two over the alleged treatment of the daughter by Lynette Little regarding judgments

she had made concerning the daughter's clothing and apparel. It was agreed that the name had been called, that the matter had occurred on school grounds, and that Lynette Little was a teacher. The appeal was submitted to the District Court on the sole issue that now section 20-4-303, MCA, was unconstitutional as it was applied to the defendant within the factual context agreed to.

The notice of appeal was filed May 24, 1974. The stipulation of facts is undated, but bears a blank for signature in the month of April 1975. The court on February 10, 1976, issued a briefing schedule order which provided that the matter should become submitted to the court for ruling on March 1, 1976. On December 10, 1976, the district judge issued his order sustaining the constitutionality of the section and dismissing the appeal from the Justice Court.

The Justice Court docket reveals that on December 14, 1976, "[t]he appeal bond in the amount of $50.00 returned to Justice Court and applied to the fine imposed by a trial by jury held in Justice Court."

Apparently a copy of the District Court order dismissing the appeal was not served upon counsel for the defendant. He learned of its existence on October 3, 1979, and filed notice of appeal to this Court on behalf of the defendant on October 25, 1979.

At the time the notice of appeal to this Court was filed, the judgment of the Justice Court had been executed in that the fine levied against the defendant had been received and paid.

There is no use in our setting out the constitutional arguments upon which the defendant bases her appeal. In the

-3-

long lapse of time since the incident here occurred, the young high schooler has presumptively grown into young womanhood, the teacher may no longer be a member of the school system at the present time, and the fine levied upon the defendant has long since been paid and deposited in the public treasury. We have no power to order its return. The judgment is executed. A question is moot when any action the court may take will have no affect on the parties to the action. Lord v. City of Tucson (1969), 10 Ariz.App. 54, 455 P.2d 1004.

The appeal is dismissed as moot. Each party shall bear their own costs.

_John C. Shelhy_
Justice

We Concur:

_Frank X. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

Justices

This cause was submitted prior to January 5, 1981.

-4-

Mr. Justice Daniel J. Shea dissenting:

Procedurally, this is a strange case. I have my doubts that it is properly here on appeal because I do not believe that it is an appeal from a final judgment of guilt in District Court. The District Court, after deciding the constitutional issue against the defendant, never held a trial on the merits to determine defendant's guilt or innocence. Because an appeal from a justice court conviction entitles a defendant to a trial de novo in District Court, the District Court had no right to dismiss the Justice Court appeal after it decided the constitutional issue. Therefore, the appeal which comes to us from the District Court, does not come from a final judgment in District Court.

Nor do I agree that the case should be dismissed as moot; nor do I agree that the reasons given for mootness are grounds at all to dismiss for mootness. The reasons given for mootness are rather nonsensical: the age of the young girl now, and the fact that the school teacher may no longer be a teacher, has nothing to do with the issue placed before us by the parties to this appeal. They have asked us to determine whether section 20-4-303, MCA, is constitutional within the context of its application to defendant.

Furthermore, to invoke the mootness doctrine on the ground that the fine money (deposited as an appeal bond to District Court) has been converted by the Justice Court into the public treasury and that we are powerless to order its return, is unjust to the extreme. The effect of this holding is that an appeal can be cut off if a judge fails to notify counsel of the ruling made and if the money

-5-

levied against the defendant can be deposited to the
treasury before the defendant learns of the adverse ruling.
That is strange and inequitable law. It's potential for
harm is obvious.

Nor do I believe that this Court or any court of
proper jurisdiction, is powerless to order the return of
the money. The fact is, the State, through its agents,
(here, the District Court and Justice Court) acted improperly.
Does the majority opinion mean that these courts cannot undo
what they have done? If it does mean this, courts are power-
less to rectify wrongs of their own making--again, another
strange legal doctrine.

Once the constitutional question was submitted to the
District Court and decided, that court has no right to
dismiss the appeal and in effect let the justice court judgment
become operative. Rather, once the District Court ruled
against defendant, he should have set the case for jury trial
on the merits, or determined if defendant would waive a
jury trial and try the case to the judge on the merits. But,
the District Court did neither.

It follows that if the District Court had no right to
dismiss the appeal, the Justice Court had no right to apply
the money to the payment of the fine. Both court actions
were illegal. This illegal action is compounded by the
failure of the District Court to give notice to defense
counsel of its ruling on the constitutional question and of
its dismissal of the appeal. There is no question here that
it was the District Court, by its failure to notify defendant
of the decision and dismissal, deprived defendant of her
ability to protect herself. To this problem, the majority
simply decides the case is moot because the fine has made its

way into the public coffers and that we are powerless to order its return. If a court does not have the power to rectify such a wrong it should not long continue to function as a court of justice.

I am also satisfied that if the defendant got a favorable ruling from this Court on the constitutional question (assuming this case to be here properly on appeal), this Court has the power to order the money to be repaid to defendant and the District Court also has such power. If the appropriate county official failed or refused to pay back the money, I have no doubt that a writ of mandate would lie against that county officer to compel payment of the money to defendant.

Even with these procedural problems underlined, I must admit that the record in this case reeks of a failure of defendant and her counsel to diligently pursue the matter. In District Court, almost three years elapsed between the time of the ruling (December 10, 1976) and the time defense counsel claims to have first heard of the adverse ruling dismissing the appeal (October 3, 1979). This case is hardly worthy of this Court's time in deciding the narrow constitutional question presented, when it is clear that neither defense counsel nor his client were interested enough in the case to find out for themselves whether or not the District Court had ruled. A failure to make inquiry for almost three years shows a complete lack of diligence in pursuing the case. Although I do not say that laches does apply in such a situation, there is no doubt that a good argument can be made.

Nonetheless, I do feel we are committing an injustice by holding that the case is moot, and we have compounded that injustice by the grounds used to declare the appeal moot.

Justice

-7-